S. LANE TUCKER
United States Attorney

JACK S. SCHMIDT
Assistant United States. Attorney
Federal Building & U.S. Courthouse
709 West 9th Street, Room 937
Post Office Box 21627
Juneau, AK 99802
Phone: (907) 796-0400
Fax: (907) 796-0409
Email: jack.schmidt@usdoj.gov

Attorneys for the Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SIMEON PHILLIP CABANSAG and CAMERON THOMAS LAWRENCE,<br><br>Defendants. | No.   1:24-cr-00002-TMB-MMS<br><br>COUNT 1:<br>CONSPIRACY<br>   Vio. 18 U.S.C. § 371<br><br>COUNTS 2-16:<br>MISREPRESENTATION OF INDIAN PRODUCED GOODS<br>   Vio. 18 U.S.C. §§ 1159(a) and (b)(1)(A)(i)<br><br>COUNTS 17-29:<br>WIRE FRAUD<br>   Vio. 18 U.S.C. § 1343 |

**INDICTMENT**

The Grand Jury charges that:

<u>GENERAL ALLEGATIONS</u>

At all times relevant to this Indictment:

1.      Cristobal "Cris" Magno Rodrigo ("C.M. Rodrigo") and Glenda Tiglao Rodrigo ("G.T. Rodrigo") were joint owners and operators of Alaska Stone Arts, LLC. and Cristobal Magno Rodrigo was the sole owner of Rail Creek, LLC. and both businesses located in Ketchikan, Alaska. G.T. Rodrigo was the sole owner of Rodrigo Creative Crafts that operated in Concepcion, Tarlac Philippines. Christian Ryan Tiglao Rodrigo ("C.R. Rodrigo"), the son of C.M. and G.T. Rodrigo, was an employee of both Alaska Stone Arts, LLC and Rail Creek, LLC who assisted in sales and with G.T. Rodrigo's day-to-day operation of both store locations in Ketchikan, Alaska, including while located outside of Alaska. All three are of Filipino descent and conspired, with each other and others, to design stone carvings and wood totem poles in the style of Alaska Native designs or styles, manufactured in the Republic of Philippines ("Philippines") with Filipino labor; import the stone carvings and wood totem poles; and display, advertise, and sell the stone carvings and totem poles to customers based on false representations that the stone carvings and totem poles were made by Alaska Natives or members of a federally recognized American Indian tribe.

2.      Alaska Stone Arts sold a wide range of stone carvings and some wood totem poles.   The products were sold as being made by Alaska Native artists and the items sold were crafted based upon traditional Alaska Native designs or styles but were not made by Alaska Natives or members of a federally recognized American Indian tribe.

Case 1:24-cr-00002-JMK-MMS   Document 2   Filed 02/22/24   Page 2 of 21

3.     Rail Creek sold a wide range of wood totem poles and some stone carvings. The products sold were not made by Alaska Natives or members of a federally recognized American Indian tribe.   However, SIMEON PHILLIP CABANSAG, who is Alaska Native, and CAMERON THOMAS LAWRENCE, who is of American Indian descent, represented to customers that the items sold by Alaska Stone Arts and Rail Creek were advertised, offered for sale, or sold as authentic Alaska Native artwork.

4.     Rodrigo Creative Crafts was a company created by G.T. Rodrigo in the Philippines. The business was responsible for hiring Filipino employees to produce stone carvings in Alaska Native designs and styles instructed by C.M. Rodrigo. Rodrigo Creative Crafts contracted with a Filipino wood carver to supply wood and to carve wood totem poles in Alaska Native designs and styles as instructed by C.M. Rodrigo.

5.     SIMEON P. CABANSAG was a co-conspirator, an Alaska Native and a member of an Alaska Native tribe, who worked as a salesperson exclusively for Alaska Stone Arts who sold stone carvings to customers, that were made in the Philippines, as authentic Alaska Native stone carvings made by others and Alaska Native stone carvings made by CABANSAG.

6.     CAMERON T. LAWRENCE was a co-conspirator, of American Indian descent and who is not an enrolled member of a federally recognized American Indian tribe, who worked as a salesperson for Alaska Stone Arts and Rail Creek, who represented and sold stone carvings and wood totem poles to customers, that were made in the Philippines, as authentic Alaska Native stone and wood carvings made by others and Alaska Native stone carvings made by LAWRENCE.

7.     Jessie Halili Reginio is a convicted conspirator, of Filipino descent, who worked as salesperson and shipper for Alaska Stone Arts and Rail Creek, who represented and sold stone carvings made in the Philippines as authentic Alaska Native stone carvings made by Reginio and others.

8.     Travis Lee Macasaet is a convicted conspirator, is Alaska Native and a member of an Alaska Native tribe, who worked as a salesperson exclusively for Rail Creek and worked as a salesperson for Alaska Stone Arts representing and sold stone carvings and wood totem poles to customers, that were made in the Philippines, as authentic Alaska Native stone carvings made by others and Alaska Native wood totem poles made by Macasaet.

## INDIAN ARTS AND CRAFTS ACT

9.     The Indian Arts and Crafts Act (IACA) makes it unlawful to offer, display for sale, or sell any good in a manner that falsely suggest that it was Indian produced, an Indian product, or the product of a particular Indian tribe, resident in the United States. 18 U.S.C § 1159(a).

10.     Congress adopted the IACA as a truth-in-marketing law with the purpose of requiring those who produce and market art and craft work to honestly represent and clarify the degree of Indian involvement in the production of the art and craft work when it is sold, displayed, or offered for sale.   25 C.F.R 309.7

Case 1:24-cr-00002-JMK-MMS   Document 2   Filed 02/22/24   Page 4 of 21

11.     Under the IACA, an "Indian" means any individual who is a member of an

Indian tribe or certified by an Indian tribe as a non-member Indian artisan.

18 U.S.C. § 1159(c)(1) and 25 C.F.R. 309.2 (a).   An "Indian artisan" means an

individual who is certified by an Indian tribe as a non-member Indian artisan. 25 C.F.R.

309.2 (b).   An "Indian product" means any art or craft made by an Indian.     The term

"made by an Indian" means that an Indian has provided the artistic or craft work labor

necessary to implement an artistic design through a substantial transformation of

materials to produce the art or craft work.   This may include more than one Indian

working together, however, the labor component of the product must be entirely Indian

for the Indian art or craft object to be an "Indian product." 25 C.F.R. 309.2 (d).   "Indian

products" include but is not limited to art made by an Indian in a traditional or non-

traditional style or medium, craft work made by an Indian in a traditional or non-

traditional style or medium, or a handicraft made by an Indian.   25 C.F.R. 309.2 (2)(i-

iii).

12.     The following are not considered "Indian product": a product in the style of

an Indian art or craft product or designed by an Indian but produced by non-Indian labor;

a product in the style of an Indian product assembled from a kit; a product originating

from a commercial product, without substantial transformation by Indian artistic or craft

work labor; Industrial products that have an exclusively functional purpose which do not

serve do not serve as a traditional artistic medium and do not lend themselves to an

Indian embellishment; a product in the style of an Indian art and craft product that is

produced in an assembly line or related production line using multiple workers not all whom are Indians.   25 C.F.R. 309.2 (3)(i-vi).

13.     An "Indian tribe" means any Indian tribe, band, nation, Alaska Native village, or organized group or community which is recognized as eligible for special programs and services provided by the United States to Indians because of their status as Indians; or any Indian group that has been formally recognized as an Indian tribe by a state legislature or by a state commission or similar organization legislatively vested with state trial recognition authority.   25 C.F.R. 309.2 (e)(1)(2); see also 25 U.S.C. § 405(b) and 43 U.S.C. §§ 1601 et seq.

## COUNT 1: CONSPIRACY

14.     The factual allegations in Paragraphs 1-8 are hereby incorporated by reference and re-alleged herein.

15.     Beginning in or about March 2016, and continuing through on or about December 8, 2021, in the District of Alaska, in or near Ketchikan, and elsewhere, defendants SIMEON P. CABANSAG and CAMERON T. LAWRENCE, and others known and unknown, conspired with each other and others known, to commit the following offense against the United States:

        a.     To knowingly display, offer for sale, and sell for $1,000 and more, stone carvings and wood totem poles, manufactured in the Philippines, in a manner that suggested the stone carvings and wood totem poles were Indian or Alaska Native produced, an Indian and Alaska Native product, and the product of a particular Indian and Alaska Native person and Indian and Alaska Native tribes, resident within the United

Case 1:24-cr-00002-JMK-MMS   Document 2   Filed 02/22/24   Page 6 of 21

States, when in truth and in fact, as they well knew and believed, the stone carvings and wood totem poles were not an Indian and Alaska Native produced, an Indian and Alaska Native product, and the product of a particular Indian and Alaska Native and Indian and Alaska Native tribe, in violation of 18 U.S.C. § 1159 (Misrepresentation of Indian Produced Goods and Products); and

b.　To cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, and sounds in furtherance of a scheme and artifice to defraud the United States and the people of the United States of money and property, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises, were false and fraudulent when made, and for the purpose of executing such scheme and artifice, to knowingly transmit and cause to be transmitted in interstate commerce by means of wire communication, certain writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343 (Wire Fraud).

<u>OBJECT OF THE CONSPIRACY AND FRAUD SCHEMES</u>

16.　It was the object of the conspiracy and fraud schemes for the defendants and their conspirators to unlawfully design and produce in the Philippines with Filipino labor, stone carvings and wood totem poles with Alaska Native designs in order to display, advertise, and sell the stone carvings and wood totem poles to customers based on false representations that the stone carvings and wood totem poles were made by Alaska Natives or members of an American Indian tribe, when in fact, the defendants and others were selling imported stone carvings and wood totem poles that were made by

Case 1:24-cr-00002-JMK-MMS   Document 2   Filed 02/22/24   Page 7 of 21

non-Indians or non-Alaska Natives and to enrich themselves by obtaining money and property from individuals under false and fraudulent pretenses, representations, and promises that individuals where purchasing authentic Alaska Native stone and wood carvings when, in fact the defendants were selling knockoff stone and wood carvings made in the Philippines by non-Alaska Natives.

<u>MANNER AND MEANS OF THE CONSPIRACY AND FRAUD SCHEMES</u>

17.    The manner and means by which the defendants sought to accomplish the objectives of the conspiracy and fraud schemes, included, among other things, the following:

a.    Stone carvings and wood totem poles were designed and produced to incorporate Alaska Native designs, styles, and subject matter related to the Tlingit tribe in Southeast Alaska. On or about 2003, C.M. Rodrigo directed G.T. Rodrigo to create Rodrigo Creative Crafts "RCC" in the Philippines for the purpose of producing stone carvings and obtaining wood totem poles. Beginning in or about 1998, C.M. Rodrigo went to the Philippines to teach the Filipino carvers how to carve stone in Alaska Native designs and styles. Beginning in or about 2015, another carver in the Philippines was hired and paid through RCC to produce wood totem poles in an Alaska Native design and styles provided by the Rodrigos to be exported to their business in Ketchikan, Alaska for sale as authentic Alaska Native stone carvings and wood totem poles.

b.    Typically, the stone carvings produced in the Philippines were engraved with names of artists identifying in particular C.M. Rodrigo ("Kilit") or C.R. Rodrigo ("Ryan" or "ЯR") or SIMEON CABANSAG ("Simeon" or "SC") or

Case 1:24-cr-00002-JMK-MMS   Document 2   Filed 02/22/24   Page 8 of 21

CAMERON T. LAWRENCE ("Cam" or "Cameron") or other employees employed in Alaska Stone Arts and Rail Creek, who were non-Indians, as well as Indians and Alaska Natives. The wood totem poles that were produced in the Philippines and sold at Rail Creek were typically not previously marked identifying the artisan.

       c.    Conspirators/co-schemers regularly wired money from the United States to the Philippines to pay for this stone and wood carving operation.

       d.    The Rodrigos and their employees CABANSAG and LAWRENCE represented to customers that the Philippine made stone carvings were authentic Alaska Native produced stone carvings, and falsely represented them to be produced by the non-Indian, Indian or Alaska Native employees of Alaska Stone Arts and Rail Creek who falsely held themselves or others out as the actual artisans of these stone carvings.

       e.    The Rodrigos maintained bank accounts, which were used to wire money to the Philippines to pay for stone and wood carvings and to collect and hold payments/deposits from deceived customers and to pay Alaska Stone Arts and Rail Creek employees, to include CABANSAG and LAWRENCE commissions on the sales to those deceived customers:

       (1) Northrim Bank Business Edge Checking Account #XXXXX9686 belonging to C.M. Rodrigo d.b.a. Alaska Stone Arts, LLC.

       (2) Northrim Bank Business Edge Checking Account #XXXXX7655 belonging to C.M. Rodrigo and G.T. Rodrigo d.b.a. Alaska Stone Arts, LLC.

f.      The Rodrigos and their employees, to include CABANSAG and LAWRENCE, in Alaska Stone Arts and Rail Creek represented to customers that Philippine made stone carvings and wood totem poles were authentic Alaska Native produced stone carvings and wood totem poles, as made by either non-Indian, Indian or Alaska Native employees of Alaska Stone Arts and Rail Creek who falsely held themselves and others out as the actual artisans of these stone carvings and wood totem poles. Employees misrepresenting themselves as the artisans of the stone carvings had their names signed in black ink or engraved in the stone carvings and as to the wood totem poles on occasion were signed and dated by employees as the artisan of the wood totem poles as the artisans, with black ink markers and took photos with the wood totem poles falsely representing them as authentic Alaska Native produced wood totem poles made by them.

g.      Conspirators/co-schemers communicated about the operations of the fraudulent scheme by email, phone calls, and text messages.

<u>OVERT ACTS</u>

18.      In furtherance of the conspiracy, and to effect the object thereof, the following overt acts, among others, were committed in the District of Alaska, Ketchikan, Alaska and elsewhere:

19.      On or about May 28, 2019, at Alaska Stone Arts, CABANSAG, an Alaska Native, sold a Philippine produced bear with a fish in its mouth stone carving for $1,435.00, representing that CABANSAG produced the carving and the carving was signed "SC," which identifies CABANSAG as the artisan. The customer paid $1,500.00

with sales tax with a Discover credit card. CABANSAG received a 20 percent commission on the sale.

20.	On or about July 14, 2019, at Alaska Stone Arts, CABANSAG, an Alaska Native, sold Philippine produced two dolphins stone carving for $1,600.00, identifying both artists as Alaska Native, which were signed "Kilit" associating C.M. Rodrigo as the artist, and the other was signed "jr". The customer paid $1,665 with sales tax with a Mastercard credit card. CABANSAG was paid a 17 percent commission.

21.	On or about July 22, 2019, at Alaska Stone Arts, CABANSAG, an Alaska Native, sold a Philippine produced eagle stone carving for $6,435.00 which was signed "Simeon," which identifies CABANSAG as the carver, and CABANSAG gifted four other Philippine produced stone carvings as part of the purchase, representing all of the carvings were made by Alaska Natives. The carvings were signed by multiple artists, including "Kilit" associated with C.M. Rodrigo, "ЯR" associated with C.R. Rodrigo. The customer paid $6,500 with sales tax with a Visa credit card. CABANSAG was paid a 17 percent commission.

22.	On or about July 25, 2019, at Rail Creek, Macasaet, an Alaska Native, sold a Philippine produced 5-foot wood totem pole for $2,435.00 after representing that it was made by him as an authentic Alaska Native produced wood totem pole. Macasaet took a picture with the wood totem pole and signed on the back of the pole indicating that Macasaet was the carver.

23.	On or about August 8, 2019, at Alaska Stone Arts, CABANSAG, an Alaska Native, and C.R. Rodrigo offered to sell to an undercover law enforcement agent two

whale tail stone carvings signed by "ЯR," and one two bears stone carving signed by "Kilit" for $7,065.00 including tax. Both CABANSAG and C.R. Rodrigo both misrepresented the carvings as produced by Alaska Natives.

24. On or about August 8, 2019, at Alaska Stone Arts, Reginio offered to sell to an undercover law enforcement agent a Philippine produced bear stone carving by "Kilit" for $2,500. Reginio misrepresented the carving as produced by an Alaska Native.

25. On or about August 19, 2019, at Alaska Stone Arts, C.R. Rodrigo and Macasaet, an Alaska Native, sold Philippine produced stone carvings, a whale tail stone carving by "ЯR" and a whale stone carving by "jr" for $2,500.00. C.R. Rodrigo identified himself as an Alaska Native artist that carved the whale tail "ЯR," and Macasaet represented that both carvers were Alaska Native artists.

26. On or about August 28, 2019, at Alaska Stone Arts, C.R. Rodrigo sold a Philippine produced salmon stone carving by "Kilit" for $1,935.00 identifying himself as the son of the master carver "Kilit" and as a Native American.

27. On or about September 10, 2019, at Alaska Stone Arts, Reginio sold to an undercover law enforcement agent, a Philippine produced humpback whale stone carving by "Kilit" and a sea turtle by "Sonny" identifying Reginio as the artist for $2,200.00. Reginio stated he was the carver of the sea turtle and represented himself and "Kilit" as Alaska Native Tlingit carvers.

28. On or about September 16, 2019, at Alaska Stone Arts, CABANSAG, an Alaska Native, sold a Philippine produced bear stone carving for $1,935.00, which was identified by CABANSAG as carved by the "main carver" C.M. Rodrigo, aka "Kilit,"

representing it was made by an Alaska Native. The customer paid $2,000 including tax with an American Express credit card. CABANSAG was paid a 17 percent commission.

29.     On or about September 22, 2019, at Alaska Stone Arts, CABANSAG, an Alaska Native, and another employee sold a Philippine produced bear with a fish in its mouth stone carving for $9,935.00 which was identified by CABANSAG as carved by the "main carver" C.M. Rodrigo, aka "Kilit," representing it was made by an Alaska Native. The customer paid $10,000 with sales tax included with a Visa credit card. CABANSAG was paid a 10 percent commission.

30.     On or about September 28, 2019, at Alaska Stone Arts, Reginio sold to an undercover law enforcement agent, a Philippine produced four bears stone carving signed by "Kilit" for $1,500.00, and Reginio identified himself as an Alaska Native Tlingit and represented "Kilit" as his uncle who is an Alaska Native Tlingit master carver.

31.     On or about September 28, 2019, at Alaska Stone Arts, Macasaet, an Alaska Native, offered to sell undercover law enforcement agents a Philippine produced eagle stone carving signed by "Kilit" for $2,500.00. Macasaet misrepresented "Kilit" as his uncle who was an Alaska Native Tlingit master carver.

32.     On or about March 14, 2021, C.R. Rodrigo, in Kent, Washington, representing Alaska Stone Arts, sold a Philippine produced whale tail stone carving signed "Ryan" for $1,200.00 and gifted a bear carving signed "ЯR." C.R. Rodrigo identified himself as the artist and as an Alaska Native Tlingit carver.

33.     On or about March 14, 2021, C.R. Rodrigo, in Kent, Washington, representing Alaska Stone Arts, sold a Philippine produced 4-foot wood totem pole for

$3,000.00. C.R. Rodrigo identified Macasaet, an Alaska Native Tlingit, as the carver of the wood totem pole. On June 9, 2021, Macasaet represented that the wood totem pole previously identified himself as the carver of the wood totem pole and posed in a picture with the totem pole and signed the back of the pole representing himself as the carver.

34.　　On or about April 28, 2021, C.M. Rodrigo, in Kent, Washington, representing Alaska Stone Arts, sold a Philippine produced moose stone carving signed "Kilit" for $3,000.00 and represented himself as the carver and as an Alaska Native Tlingit; C.M. Rodrigo also sold a Philippine produced humpback whale stone carving signed "Simeon" identifying CABANSAG, an Alaska Native as the artist for $1,200.00, and a Philippine produced 4-foot wood totem pole identifying Macasaet, an Alaska Native as the artist for $2,000.00.

35.　　On or about July 2, 2021, at Alaska Stone Arts, LAWRENCE, of American Indian descent, sold a Philippine produced bear stone carving signed by "Andrew" for $1,600.00 and LAWRENCE misrepresented the artist "Andrew" as an Alaska Native artist. The customer was charged $1,600.00 on their Mastercard credit card. LAWRENCE received a 20 percent commission for this sale.

36.　　On or about July 9, 2021, at Alaska Stone Arts, LAWRENCE, of an American Indian descent, sold a Philippine produced 19-inch wood totem pole for $300.00 after misrepresenting Macasaet, an Alaska Native, as the artist who carved the wood totem pole. The customer paid a total of $319.50 with tax on their Star debit card. LAWRENCE received a 20 percent commission on the sale.

37.     On or about July 12, 2021, at Alaska Stone Arts, C.M. and G.T. Rodrigo sold a Philippine produced bear with salmon stone carving signed by "Kilit" for $1,000.00 and gifted a small standing eagle stone carving signed by "jr." C.M. Rodrigo represented the carvers of the two stone carvings as Alaska Natives.

38.     On or about July 15, 2021, at Alaska Stone Arts, C.M. and G.T. Rodrigo sold a Philippine produced salmon stone carving signed by "Kilit" for $1,600.00 and gifted a humpback whale stone carving signed by "Sonny" and represented the carvers of the two stone carvings as Alaska Natives.

39.     On or about August 8, 2021, at Alaska Stone Arts, LAWRENCE, of an American Indian descent and Macasaet, an Alaska Native, sold a stone carving of two sea turtles for $1,870.00 represented as Alaska Native made. The customer paid a total of $2,000.00 with tax on their Visa credit card. LAWRENCE and Macasaet each received a 10 percent commission on the sale.

40.     On or about August 8, 2021, at Alaska Stone Arts, LAWRENCE, of American Indian descent and Macasaet, an Alaska Native, sold to an undercover law enforcement agent, a Philippine produced 22-inch wood totem pole for $1,500.00 that Macasaet represented he carved and signed in black marker with his name and the month/year that he made the wood totem pole as an Alaska Native artist. The customer paid a total of $1,500.00 with tax on their Visa credit card. LAWRENCE and Macasaet each received a 10 percent commission on the sale. During that same contact, LAWRENCE offered to sell to the undercover agent a Philippine produced black bear standing on a rock signed by "Kilit" and a dancing bear stone carvings signed by "jr" for

$1,500.00, representing that "jr" and "Kilit" were Alaska Native artists. LAWRENCE and Macasaet represented each other as Alaska Native cousins and master carver "Kilit" as their uncle.

41.     On or about August 21, 2021, at Alaska Stone Arts, LAWRENCE, of an American Indian descent and Macasaet, an Alaska Native, sold a stone carving of an Inuit with a spear for $1,200.00 as being made by an Alaska Native. LAWRENCE and Macasaet claimed to be from the same Alaska Native family of carvers, to include CABANSAG, and "Kilit" was the master carver. The customer paid a total of $1,200.00 on their debit card. LAWRENCE and Macasaet each received a 10 percent commission on the sale.

42.     On or about August 26, 2021, at Alaska Stone Arts, CABANSAG, an Alaska Native and LAWRENCE, of an American Indian descent, sold a Philippine produced a whale tail, a kayak hunter, and a humpback whale stone carvings signed by "Kilit" for $4,435.00, with CABANSAG and LAWRENCE representing themselves as Alaska Natives and the artist "Kilit" as their uncle, an Alaska Native carver, who produced the carvings locally in Ketchikan.   The customer paid a total of $3,800.00 on a Visa credit card and $700.00 in cash. CABANSAG and LAWRENCE each received a 10 percent commission on the sale.

43.     On or about August 27, 2021, at Alaska Stone Arts, CABANSAG, an Alaska Native and LAWRENCE, of an American Indian descent, sold a Philippine produced bear with an eagle on its back stone carving signed by "Kilit" for $1,371.19 and CABANSAG represented that the artist "Kilit" as an Alaska Native family member. The

customer paid a total of $1,460.31 with sales tax on a Visa credit card. CABANSAG and LAWRENCE each received a 10 percent commission on the sale.

44.     On or about August 29, 2021, at Alaska Stone Arts, CABANSAG and Macasaet, Alaska Natives, sold a Philippine produced humpback whale stone carving signed "Simeon" with CABANSAG represented as an Alaska Native artist, for $3,000.00 and a small bear carving by Jon Fathom for $235.00. CABANSAG and Macasaet gifted a Philippine produced unsigned bear, two small bear stone carvings signed "ЯR," and a standing eagle carving signed "Cameron." The customer paid a total of $3,300.00 with tax on an American Express credit card. CABANSAG and Macasaet each received a 10 percent commission on the sale. CABANSAG and Macasaet represented that all the stone carvers were local Alaska Natives artists that were related to them. Macasaet sold a Philippine produced bear with a fish in its mouth stone carving signed by "Kilit" for $3,200.00 and represented the carver as an Alaska Native artist.

45.     On or about September 17, 2021, at Alaska Stone Arts, Macasaet, an Alaska Native, sold to an undercover agent a Philippine produced 22-inch wood totem pole for $1,200.00 and gifted a 12-inch and a 11-inch wood totem poles and signed the 22-inch wood totem pole with his name in black marker with the month/year it was made by Macasaet as the carver and that all the carvers in the business were Macasaet's Tlingit relatives who made the wood totem poles. Macasaet sold a Philippine produced 3-inch bear stone carving for $50.00 signed "jr," representing the carver as an Alaska Native.

<u>COUNTS 2-16</u>

46.    Paragraphs 1-8, 16-17, and 19-45 are re-alleged and incorporated herein by reference.

47.    Between in or about March 2016 through December 8, 2021, the defendants, SIMEON P. CABANSAG and CAMERON T. LAWRENCE, within the District of Alaska and elsewhere, did knowingly offer and display for sale and sell goods, specifically stone carvings and wood totem poles not made by an Alaska Native, in a manner that falsely suggested these goods as being Indian produced and Indian products, in particular that they were authentic Alaska Native carvings, knowing that they were not.

All of which is in violation of Title 18, United States Code, § 1159 (a) and (b)(1)(A)(i).

| COUNT | DATE (On or About) | STORE |
|---|---|---|
| 2 | May 28, 2019 | Alaska Stone Arts (ASA) |
| 3 | July 14, 2019 | ASA |
| 4 | July 22, 2019 | ASA |
| 5 | August 8, 2019 | ASA |
| 6 | September 16, 2019 | ASA |
| 7 | September 22, 2019 | ASA |
| 8 | July 2, 2021 | ASA |
| 9 | July 9, 2021 | ASA |
| 10 | August 8, 2021 | ASA |
| 11 | August 8, 2021 | ASA |
| 12 | August 8, 2021 | ASA |
| 13 | August 21, 2021 | ASA |
| 14 | August 26, 2021 | ASA |
| 15 | August 27, 2021 | ASA |
| 16 | August 29, 2021 | ASA |

Case 1:24-cr-00002-JMK-MMS   Document 2   Filed 02/22/24   Page 18 of 21

48.     Paragraphs 1-8, 16-17, and 19-45 are re-alleged and incorporated herein by reference.

49.     From in or around March 2016, until at least in or around December 8, 2021, within the District of Alaska and elsewhere, the defendants, SIMEON P. CABANSAG and CAMERON T. LAWRENCE, did knowingly, and with the intent to defraud, devise, and intend to devise a scheme and artifice to defraud as to a material matter, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and by concealment of material facts.

50. The fraudulent scheme was operated and carried out, in substance, as set forth in paragraphs 1-8, 16-17, and 19-45 of this Indictment.

51. For the purpose of executing such scheme and artifice and attempting to do so, the defendants did transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs and signals, namely:

| COUNT | DATES | WIRE TRANSACTION |
|---|---|---|
| 17 | May 28, 2019 | Credit card charge for $1,500.00 from L.S. to Alaska Stone Arts (ASA) Northrim Bank business edge checking account, ending in - 7655 |
| 18 | July 14, 2019 | Credit card charge for $1,665.00 from W.T. to Alaska Stone Arts (ASA) Northrim Bank business edge checking account, ending in - 9686 |
| 19 | July 22, 2019 | Credit card charge for $6,500.00 from T.W. to Alaska Stone Arts (ASA) Northrim Bank business edge checking account, ending in - 9686 |

Case 1:24-cr-00002-JMK-MMS   Document 2   Filed 02/22/24   Page 19 of 21

| 20 | September 16, 2019 | Credit card charge for $2,000.00 from D.P. to Alaska Stone Arts (ASA) Northrim Bank business edge checking account, ending in - 7655 |
|----|-------------------|---------------------------------------------------------------------------------------------------------------------------|
| 21 | September 22, 2019 | Credit card charge for $10,000.00 from G.R. to Alaska Stone Arts (ASA) Northrim Bank business edge checking account, ending in - 7655 |
| 22 | July 2, 2021 | Credit card charge for $1,600.00 from S.S. to Alaska Stone Arts (ASA) Northrim Bank business edge checking account, ending in – 7655 |
| 23 | July 9, 2021 | Debit card charge for $319.50 from K.B. to Alaska Stone Arts (ASA) Northrim Bank business edge checking account, ending in – 7655 |
| 24 | August 8, 2021 | Credit card charge for $2,000.00 from H.O. to Alaska Stone Arts (ASA) Northrim Bank business edge checking account, ending in – 7655 |
| 25 | August 8, 2021 | Credit card charge for $1,500.00 from K.K. to Alaska Stone Arts (ASA) Northrim Bank business edge checking account, ending in – 7655 |
| 26 | August 21, 2021 | Debit card charge for $1,200.00 from R.G. to Alaska Stone Arts (ASA) Northrim Bank business edge checking account, ending in – 7655 |
| 27 | August 26, 2021 | Credit card charge for $2,000.00 and credit card charge for $1,800.00 from C.P. to Alaska Stone Arts (ASA) Northrim Bank business edge checking account, ending in – 7655 |
| 28 | August 27, 2021 | Credit card charge for $1,460.31 from S.M. to Alaska Stone Arts (ASA) Northrim Bank business edge checking account, ending in – 7655 |
| 29 | August 29, 2021 | Credit card charge for $3,300.00 from D.C. to Alaska Stone Arts (ASA) Northrim Bank business edge checking account, ending in – 7655 |

Case 1:24-cr-00002-JMK-MMS   Document 2   Filed 02/22/24   Page 20 of 21

All of which is in violation of 18 U.S.C. § 1343.

A TRUE BILL.

s/ Grand Jury Foreperson
GRAND JURY FOREPERSON

s/ Jack Schmidt
JACK S. SCHMIDT
Assistant U.S. Attorney
United States of America

s/ Kate Vogel for
S. LANE TUCKER
United States Attorney

DATE: _____2/21/2024_____